**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| AMPHENOL CORP.,<br>*Plaintiff*,<br><br>v.<br><br>FACTORY MUT. INS. CO.,<br>*Defendant*. | No. 3:21-cv-102 (OAW) |

### RULING ON MOTIONS FOR JUDGMENT ON THE PLEADINGS

Before the court is Defendant's Motion for Judgment on the Pleadings, *see* ECF No. 48 (with its memorandum in support, ECF No. 49, "Defendant's Motion"); Plaintiff's Motion for Judgment on the Pleadings, *see* ECF No. 52 (with its supporting memorandum, ECF No. 53, "Plaintiff's Motion"); and Plaintiff's Motion for Leave to File an Amended Complaint, *see* ECF No. 90 (with its supporting memorandum, ECF No. 91, "Motion to Amend").[1] The court has reviewed all three motions,[2] all oppositions to the motions, *see* ECF Nos. 60, 61, and 94; all replies in support of the motions, *see* ECF Nos. 62, 63, and 95, all notices of supplemental authority and responses thereto, *see* ECF Nos. 81, 82, 87, 89, 96, 97, 98, 99, 100, 101, and 102;[3] and the record in this matter and is fully advised in the premises. For the reasons discussed herein, Defendant's Motion is **GRANTED;** Plaintiff's Motion is **DENIED;** and the Motion to Amend is **DENIED.**

---

[1] Defendant also filed a motion to stay discovery pending disposition of Defendant's Motion and Plaintiff's Motion, *see* ECF No. 64, which is mooted by this ruling and therefore will not be discussed.
[2] The court finds that the briefs are thorough and complete and there is no need for oral argument on the Motion. Therefore, the request for oral argument is denied. *See* D. Conn. L. Civ. R. 7(a)(3) ("Notwithstanding that a request for oral argument has been made, the [c]ourt may, in its discretion, rule on any motion without oral argument.").
[3] Where any of these notices or responses present arguments which were not articulated in the principal briefs, the court has ignored those arguments.

1

**I.     BACKGROUND**

Plaintiff is a manufacturer and distributor of electronic, electrical, and fiber optical components and systems. *See* ECF No. 1 at 1. Defendant is an insurance company that sold Plaintiff an insurance policy (the "Policy") to insure against specified losses to Plaintiff's business. *Id.* at 3. The Policy was effective for the period of January 1, 2020, to January 1, 2021. *Id.* at 7.

As a result of the COVID-19 pandemic, Plaintiff incurred significant economic losses: Plaintiff asserts it suffered in excess of $100 million in property damage and lost business income. *Id.* at 3. Plaintiffs filed a claim against the Policy, asserting that benefits were due under ten different Policy provisions, but Defendant determined that a maximum of $1 million in benefits was payable under only two "Communicable Disease" provisions. ECF No. 91-1 at 4, 42.[4] Plaintiff asserts that it is still entitled to additional tens or hundreds of millions of dollars under the other eight provisions ("Coverage Provisions").[5] *Id.* at 42.

Plaintiff brought this action on January 21, 2021. ECF No. 1. In both the original complaint and its proposed amended complaint, Plaintiff asserts two counts: the first seeks a declaration that the Policy does cover the losses Plaintiff incurred as a result of the COVID-19 pandemic, and the second alleges that Defendant breached the insurance contract when it denied Plaintiff's claim. *Id.*; ECF No, 91-1. Both Defendant's Motion and

---

[4] At the time the original complaint was filed, Defendant had not yet made a determination of coverage in relation to Plaintiff's claim. Defendant filed a notice that it has resolved the claim, *see* ECF No. 88, and Plaintiff has filed a proposed amended complaint that confirms the information reported in the notice, *see* ECF No. 91-1. To the extent that the original complaint and the parties' briefs asserted claims and arguments relevant to the denial of benefits under the "Communicable Disease" provisions, the court finds those claims and arguments moot and will not discuss them herein.

[5] The specific terms are the "Direct Property Loss/Damage" provision; the "Direct Time Element Losses" provision; the "Losses Due to Orders of Civil Authority" provision; the "Losses Due to Impairment of Ingress or Egress" provision; the "Contingent Time Element Losses" provision; the "Expediting Costs and Extra Expenses" provision; the "Logistics Extra Costs" provision; and the "Claims Preparation Costs" provision. *See* ECF No. 1 at 20–35.

Plaintiff's Motion were filed on May 28, 2021, *see* ECF Nos. 48 and 52, and this matter was transferred to the undersigned on December 8, 2021, *see* ECF No. 75.  On September 21, 2022, Plaintiff filed the Motion to Amend, updating the factual allegations to reflect that Defendant had paid $1 million in benefits under the Policy and adducing additional facts about the physical damage to property incurred.  *See* ECF Nos. 90–91.  All three motions are now ripe for review.

## II.     LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  When reviewing a Rule 12(c) motion, "the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).  "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *Id.* (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004)) (alteration in original).  The court "will accept all factual allegations in the complaint as true and draw all reasonable inferences" in favor of the complainant.  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir.2010)).  A Rule 12(c) motion only will be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

## III.   DISCUSSION

Under Connecticut law,[6] an insurance contract is construed using the same general rules that apply to all written contracts. *Connecticut Med. Ins. Co. v. Kulikowski*, 286 Conn. 1, 5 (Conn. 2008) ("An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract. . . .") (quoting *Enviro Express, Inc. v. AIU Ins. Co.*, 279 Conn. 194, 199 (2006)) (alteration in original). The language in any insurance policy is given its ordinary meaning. *Id.* ("If the terms of the policy are clear and unambiguous, then the language . . . must be accorded its natural and ordinary meaning.") (quoting *Schilberg Integrated Metals Corp. v. Cont'l Cas. Co.*, 263 Conn. 245, 267 (Conn. 2003)). If any term is ambiguous, that the term "must be construed in favor of the insured . . . ." *Id.* at 6 (quoting *Enviro Express*, 279 Conn. at 199). This discussion therefore must start with a review of the Policy itself.

### a.  Policy Language

It is undisputed that the Policy and its eight Coverage Provisions cover "all risks of physical loss or damage" to insured properties, unless otherwise excluded in the Policy. ECF No. 49-2 at 1 (capitalization excluded). The Policy contains two relevant exclusions:

---

[6] Both parties assert, and the court agrees, that the choice-of-law provisions of the forum state should apply in this diversity action. *See Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir.1999) ("Federal courts exercising diversity jurisdiction must apply the choice of law rules of the forum state . . . ."). The court further agrees with the parties that under Connecticut law, the court should apply the laws of the state with the most significant relationship to the transaction at issue, which in this case is Connecticut, since the Policy was delivered to Amphenol in Connecticut and Amphenol's headquarters are in Connecticut. *See Sadowski v. Dell Computer Corp.*, 268 F. Supp. 2d 129, 134 (D. Conn. 2003) (noting that Connecticut follows the "most significant relationship" test).

one (the "Loss of Use Exclusion") explicitly excludes "loss of market or loss of use," *id.* at 15, and the other (the "Contamination Exclusion") explicitly excludes

> contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured. This exclusion does not apply to radioactive contamination which is excluded elsewhere in this Policy[,]

*id.* at 18 (boldface type excluded). "Contamination" is defined elsewhere in the Policy as "any condition of property due to the actual or suspected presence of any . . . pathogen or pathogenic organism, bacteria, virus, [or] disease causing or illness causing agent . . . ." *Id.* at 76.

Defendant's Motion and Plaintiff's Motion present two issues: (1) whether Plaintiff has alleged "physical loss or damage" within the meaning of the Policy, and (2) whether the Loss of Use Exclusion or the Contamination Exclusion bars coverage. Defendant takes the position that it is entitled to judgment as a matter of law on both Plaintiff's claims because there was no physical loss of or damage to any covered property, and because even if there were, the Loss of Use Exclusion or the Contamination Exclusion clearly would exclude coverage for any business interruption caused by the COVID-19 pandemic. Plaintiff asserts it sufficiently has pled that its facilities suffered direct physical loss and damage, and that neither the Loss of Use Exclusion nor the Contamination Exclusion excludes its losses.[7]

---

[7] Plaintiff's Motion seeks only partial judgment (on the claim for declaratory relief) and only addresses the Contamination Exclusion. Plaintiff presents its arguments regarding the Loss of Use Exclusion and "physical loss or damage" in its opposition to Defendant's Motion.

### b. Physical Loss or Damage

Defendant argues that Plaintiff's economic losses do not trigger coverage because the novel coronavirus does not cause "physical loss or damage" as defined by the Policy, in that "physical loss or damage" requires structural damage to facilities or equipment (requiring repair or replacement) and the virus did not physically deteriorate any property; any resulting harm could be eradicated with mere cleaning or the simple passage of time. In its notices of supplemental authority, Defendant cites a growing body of caselaw (from the Supreme Court of Connecticut, the District of Connecticut, and the Second Circuit) in which courts have found that the coronavirus does not cause physical loss or damage pursuant to insurance contracts with substantially similar terms to those in the Policy.

Plaintiff responds that Defendant's cited cases hinge upon pleading deficiencies nonexistent in this case, and Plaintiff asserts that it has suffered qualifying physical loss in that "loss" includes loss of *use*, not simply a sufficient degree of physical damage, and it clearly lost the ability to use its facilities. Plaintiff further asserts that our understanding of the coronavirus continues to evolve, and that recent discoveries show the virus capable of bonding to and absorbing into surfaces, allowing those surfaces to transmit the virus through contact, thus rendering the facilities housing such surfaces unfit for intended use. Plaintiff alleges that this qualifies as structural alteration sufficient to satisfy the Policy. Plaintiff also has alleged (in the proposed amended complaint) specific structural responses to the pandemic that it contends qualifies as "damage," such as adjustments to facility layouts and replacing HVAC filters and units. Plaintiff also argues that the ability to clean surfaces does not bar coverage, but merely helps assess loss, and that the air through which coronavirus has been dispersed cannot be cleaned.

The court agrees with the authorities that already have decided this issue in favor of Defendant's position. In *Connecticut Dermatology Grp., PC v. Twin City Fire Ins. Co.*, 346 Conn. 33 (2023), the Supreme Court of Connecticut found that the same losses claimed by Plaintiff here (business income losses and refitting costs) do not qualify as "direct physical loss or physical damage" to property. And, as Plaintiff concedes in Plaintiff's Motion, "when a Connecticut court has spoken on an issue of state law, a federal court will faithfully apply both the letter and spirit of that authority, even if it might have reached a different outcome on that issue." ECF No. 53 at 16 (citing *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177 (1940) ("The highest state court is the final authority on state law . . . .")). While this is sufficient authority to resolve the present case, Defendant offers far more. In *Connecticut Dermatology*, the Supreme Court of Connecticut spoke approvingly of a Second Circuit opinion that reached the same conclusion regarding a policy with similar language. *See Farmington Vill. Dental Assocs., LLC v. Cincinnati Ins. Co.*, No. 21-2080-CV, 2022 WL 2062280, at *1 (2d Cir. June 8, 2022) (finding that the plaintiff's "allegations that SARS-CoV-2 causes physical loss or physical damage to its property by way of its transmissibility through physical particles in the air and on surfaces fail to allege how the presence of those virus-transmitting particles *tangibly* alter or impact the property.") (italics in original). And subsequent to *Connecticut Dermatology*, the Second Circuit found that the exact language used by Defendant in the Policy is "substantively identical in relevant respect to that at issue in *Connecticut Dermatology*," and concluded that tangible alteration was required to show "physical loss or damage." *ITT Inc. v. Factory Mut. Ins. Co.*, No. 22-1245, 2023 WL 1126772, at *1 (2d Cir. Jan. 31, 2023).

7

Plaintiff attempts to couch its pleading as appreciably different from others that have been dismissed, but the court disagrees. Both the Supreme Court of Connecticut and the Second Circuit (applying Connecticut law) have rejected the same arguments Plaintiff raises here. *Connecticut Dermatology* addressed the contention that the threat of COVID-19 resulted in a physical loss of business properties because they became "potential viral incubators that were imminently dangerous to human beings[,]" admiring the ingenuity of the argument, but rejecting it because the pandemic did not physically transform the properties. *Connecticut Dermatology,* 346 Conn. at 52 (quoting plaintiffs' brief). The court went on to reject the contentions that the lost *use* of a property can amount to a "physical loss", *id.* at 53–54, and that refitting them to prevent transmission of the virus constituted "repairs" within the ordinary meaning of the word, *id.* at 55. Finally, the court distinguished discrete events that rendered a property inaccessible (due to an imminent threat to anyone entering it) from the pandemic's effect on buildings (which did not render them uninhabitable or inherently dangerous due to a discrete physical event; rather, people gathering in the space created the potential danger). *Id.* at 56–57. And in *ITT Inc.*, the Second Circuit rejected the premise that determining whether alteration to property has occurred is a factual question dependent upon emerging science, and it concluded that the physical reconfiguration of the plaintiff's facilities did not cause physical loss or damage. 2023 WL 1126772 at *2.

These cases are dispositive. Although Plaintiff clearly has attempted to plead around these rulings by alleging damage and consequential repairs, the only "damage" the complaint specifically describes is the presence of viral particles on surfaces, and the only "repairs" described are the cleaning (specialized as it was) of Amphenol facilities, the

installation of additional barriers and workspaces, and the replacement of HVAC units and filters. However, as the Supreme Court of Connecticut and the Second Circuit have made clear, cleaning and refitting existing structures to address new safety needs do not qualify as "repairs." Moreover, there is no allegation that there was any actual *damage* to the replaced HVAC filters or units. As generally happens during routine maintenance, the filters apparently performed their function (though quicker than anticipated) and were replaced. And there is no claim that the units themselves no longer function as intended; it is not indicative of damage that changing business needs cause a piece of equipment to no longer perform at its required level. Accordingly, the court concludes that Plaintiff has failed to show "physical loss or damage" sufficient to trigger coverage under the Policy under any of the Coverage Provisions.

Because the court finds that Plaintiff has not shown "physical loss or damage" covered by the Policy, it need not address whether any exclusions also would bar coverage. And because the court has considered Plaintiff's proposed amended complaint during such review, the court finds that even the additional facts proffered therein are inadequate to save Plaintiff's claims. The Motion to Amend therefore is denied.

**IV.   CONCLUSION**

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Judgment on the Pleadings, ECF No. 48, is **GRANTED.**
2. Plaintiff's Motion for Judgment on the Pleadings, ECF No. 52, is **DENIED.**
3. Defendant's Motion to Stay Discovery, ECF No. 64, is **DENIED as moot.**

4. Plaintiff's Motion for Leave to File an Amended Complaint, ECF No. 90, is **DENIED.**

5. The Clerk of Court is asked, respectfully, to enter judgment in favor of the Defendant and to close this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 24th day of April, 2023.

_____/s/_____

OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE